

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/04/2014

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 13-36616 |
| SUPPIES, INC.; dba MERIT FLORIST; | § | CHAPTER 11 |
| dba TUCKER'S FLORIST; dba SUPPIES | § | |
| | § | |
| Debtor(s). | § | DAVID R. JONES |

## MEMORANDUM OPINION
(Docket No. 40)

Before the Court is the Debtor's Objection to Proof of Claim Number 1 of the Texas Comptroller of Public Accounts (the "Comptroller") [Docket No. 40]. The Court conducted an evidentiary hearing on the Debtor's objection on May 20, 2014. In support of the objection, the Debtor offered both testimonial and documentary evidence. The Comptroller offered no evidence in support if its claim other than to cross-examine the Debtor's representative. For the reasons set forth below, the Court finds that the objection should be sustained and that the proof of claim filed by the Comptroller should be disallowed in its entirety. A separate order consistent with this opinion will issue.

### Relevant Factual Background

Suppies, Inc. (the "Debtor") was formed under Delaware law on August 11, 2009 [Exhibit 8]. The Debtor registered to conduct business in Texas on September 25, 2009 [Exhibit 9]. The Debtor has two shareholders, Alexander Shapiro and Kathryn Maingot, each with a 50% interest.

Prior to forming the Debtor, Mr. Shapiro and Ms. Maingot owned an entity by the name of Kaya Enterprises, Inc. ("Kaya"). Kaya was formed under Texas law on January 23, 2004. From its inception, Kaya operated an internet floral business at its leased premises located at 6750 West Loop South, Bellaire, Texas [Exhibit 5]. Ms. Maingot testified that the company's primary assets consisted of furniture, computers and an elaborate phone system located at the leased premises.

In February, 2009, the Comptroller issued an assessment against Kaya in an amount in excess of $2.8 million plus penalties and interest for uncollected sales taxes for the period from November 2004 – May 31, 2008. In challenging the assessment, Kaya asserted that it was not (i) a florist for purposes of Texas sales tax law; and (ii) required to collect sales tax for transactions originating and terminating outside of Texas. Kaya was unsuccessful in overturning the Comptroller's assessment.

On July 29, 2010, Kaya received notification from its landlord that the locks to its leased premises had been changed due to a non-monetary default [Exhibit 15]. On October 5, 2010, the

landlord notified Kaya that all personal property in the leased premises was being retained [Exhibit 16]. Ms. Maingot testified that none of the personal property was ever returned. The landlord ultimately obtained a judgment against Kaya in excess of $430,000 for unpaid rent and related damages [Docket No. 18].

The Debtor commenced the operation of an internet floral business in August 2010. The Debtor operated its business from a leased space located at 6300 West Loop South, Bellaire, Texas [Exhibit 10]. Ms. Maingot testified that she and Mr. Shapiro purchased all new furniture, computers and equipment for the Debtor. Ms. Maingot further testified that the Debtor obtained a new website address to conduct its business.

In late 2011, the Comptroller asserted that the Debtor was responsible for payment of Kaya's tax obligations as the recipient of a "fraudulent transfer or sham transaction" under § 111.024 of the Texas Tax Code. The Court notes that several documents regarding the specifics of this assertion are attached to pleadings filed in this case by the parties but were not offered as exhibits at the hearing. Documents attached to a pleading do not magically become *per se* admissible evidence nor is there a presumption that such documents are being offered as admissible evidence. Likewise, statements in a pleading as to what occurred are not testimony and are afforded no evidentiary weight. The Court is limited to consideration of the record actually presented.

The Debtor filed a voluntary chapter 11 petition on October 28, 2013 [Docket No. 1].

On October 31, 2013, the Comptroller filed a one-page proof of claim on behalf of "the State of Texas, Texas Municipalities, Texas Counties, Special Purpose Districts and/or Texas Metropolitan or Regional Transportation Authorities" asserting a priority unsecured claim against the Debtor in the amount of $3,639,039.03 [Claims Docket No. 1]. The stated basis for the claim is unpaid "sales and use tax ch. 151, (321, 322, 323)" [Exhibit 1]. The proof of claim attaches no supporting documentation and is purportedly signed[1] by "Mary Ann Brown, Accounts Examiner" [Exhibit 1].

On December 16, 2013, the Debtor filed its objection to the Comptroller's proof of claim [Docket No. 40]. In the objection, the Debtor put the Comptroller's claim in context. As set forth above, the claim arises not from any action by the Debtor but from uncollected sales taxes for internet floral sales by Kaya.

The Comptroller filed its response to the Debtor's objection on May 8, 2014 [Docket No. 70]. Although untimely, the Court has given full consideration to the arguments raised by the Comptroller in its response.

A hearing to consider the Debtor's objection was originally scheduled for January 21, 2014 at 10:00 a.m. [Docket No. 40]. On January 3, 2014 and at the parties' request, the hearing was rescheduled for February 26, 2014 at 10:00 a.m. [Unnumbered entry after Docket No. 41].

---

[1] The proof of claim is signed "/s MARY ANN BROWN." Ms. Brown did not appear to testify nor did the Comptroller produce a proof of claim actually signed by Ms. Brown.

The hearing was subsequently rescheduled at the parties' request to April 2, 2014 at 9:00 a.m. [Unnumbered entry after Docket No. 55].

On April 1, 2014, the Debtor filed a motion for a third continuance [Docket No. 62]. The basis for the motion was that the Comptroller needed to substitute counsel due to ongoing medical issues of lead counsel [Docket No. 62]. The Court granted the motion by Order entered April 1, 2014 and set a continued hearing for May 20, 2014 at 2:00 p.m. (Houston time) [Docket No. 63].

In addition to the untimely response referenced above, the Comptroller also filed on May 8, 2014 (i) a motion to abstain [Docket No. 71]; and (ii) a motion to dismiss the bankruptcy case with prejudice [Docket No. 74]. On May 16, 2014, the Comptroller filed (i) an emergency motion to continue the May 20, 2014 hearing [Docket No. 78]; and (ii) an emergency motion to shorten the response time to the Comptroller's motion to abstain [Docket No. 79].

Despite the fact that the Comptroller failed to comply with multiple rules in filing these pleadings, the Court granted the motion to shorten the Debtor's response time by Order entered May 16, 2014 [Docket No. 80]. After considering the Comptroller's pleadings, the Court denied the motion for a continuance finding that no legitimate basis existed for the requested relief by Order entered May 16, 2014 [Docket No. 81]. The Court also denied the motion for abstention by separate Order entered May 16, 2014 [Docket No. 82].

On May 20, 2014, the Court conducted an evidentiary hearing on the Debtor's objection. The Debtor offered a total of 20 exhibits which were admitted without objection. The Debtor also offered the testimony of Kathryn Maingot. The Comptroller offered no evidence other than the cross-examination of Ms. Maingot. The Court finds Ms. Maingot to be a genuine and credible witness.

## Analysis

The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. § 157(b)(2)(B). The Court has constitutional authority to enter a final order in this matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

The parties initially disagree on who has the burden of proof in this proceeding, citing to provisions of the Texas Tax Code. The Comptroller asserts that the Debtor bears the burden of proving that it did not receive Kaya's assets or its business through a fraudulent transfer or a sham transaction citing to § 111.013 of the Texas Tax Code. Section 111.013 provides that a certificate from the comptroller is *prima facie* evidence of (i) the amount of the tax; (ii) the amount of penalties and interest; (iii) the delinquency of the amounts owed; and (iv) the Comptroller's compliance with the Tax Code in computing the amount due. TEX. TAX CODE. ANN. § 111.013(a) (Vernon 2008). The Comptroller has not cited, and the Court cannot locate any decision that stands for the proposition advanced by the Comptroller. The language of § 111.013 is unambiguous. In simple English, the comptroller's certificate establishes the due date and the math—nothing more.

Under FED. R. BANKR. P. 3001, the Comptroller's proof of claim constitutes *prima facie* evidence of <u>both</u> the validity and the amount of the claim. FED. R. BANKR. P. 3001(f). The Debtor therefore bears the burden to put forth sufficient evidence to overcome the presumption. *In re O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998). If successful, the burden shifts back to the Comptroller to establish its claim in accordance with applicable law. *Id.* The Court finds that the Debtor presented sufficient evidence to overcome the *prima facie* effect of the Comptroller's proof of claim.

Under § 111.024, "a person who acquires a business or the assets of a business from a taxpayer through a fraudulent transfer or a sham transactions is liable for any tax, penalty, and interest owed by the taxpayer." TEX. TAX CODE ANN. § 111.024(a) (Vernon 2008). "A transfer of a business or the assets of a business is considered to be a fraudulent transfer or a sham transaction if the taxpayer made the transfer or undertook the transaction: (1) with intent to evade, hinder, delay, or prevent the collection of any tax, penalty, or interest owed under this title; or (2) without receiving a reasonably equivalent value in exchange for the business or business assets subject the transfer or transaction." TEX. TAX CODE ANN. § 111.024(b) (Vernon 2008).

In determining the taxpayer's intent, the Court may consider, among other factors, whether (i) the transfer was to a current or former business insider, associate of employee of the taxpayer or to a personal related to the taxpayer within the third degree of consanguinity by blood or marriage; (ii) the transfer was to a third party who subsequently transferred the business or assets of the business to a current or former business insider associate of employee of the taxpayer or to a personal related to the taxpayer within the third degree of consanguinity by blood or marriage; (iii) the taxpayer retained possession or control of the business or the assets of the business after the transfer or transaction; (iv) the taxpayer's business and the transferee's business are essentially operated as a single business entity at the same location; (v) before the transfer or the transaction occurred, the taxpayer had been subjected to or apprised of an impending collection action by the comptroller or the attorney general; (vi) the transfer or transaction was concealed; (vii) the taxpayer was insolvent at the time of the transfer or became insolvent not later than the 31st date after the transfer or transaction occurred; and (viii) the transfer or transaction involved all or substantially all of the taxpayer's assets. TEX. TAX CODE ANN. § 111.024(c) (Vernon 2008).

In this case, the record reflects that Mr. Shapiro and Ms. Maingot walked away from Kaya and its assets and started a new, albeit similar, business. The record further reflects that the Debtor was capitalized from the personal assets of Mr. Shapiro and Ms. Maingot and that no transfer of any business or assets of Kaya ever occurred. The Comptroller suggests that the experience and talents of Mr. Shapiro and Ms. Maingot were transferred to the Debtor and that transfer is sufficient to trigger the liability imposed under § 111.024. The Comptroller's theory suffers a critical flaw. The individual talent and experience held by Mr. Shapiro and Ms. Maingot never belonged to Kaya—rather, to the extent that Mr. Shapiro's and Ms. Maingot's mental processes are property interests, they belong to the individuals. Under the Comptroller's theory, the owners of an unsuccessful business could never start over. Instead, they would be bound to forever suffer under the Comptroller's shackles until they were freed of their

obligations.  This state and this country were founded on contrary principles.  So long as citizens follow the law, they are permitted to try and fail; only to hoist themselves back onto their feet to try again.  The Court finds that Mr. Shapiro, Ms. Maingot and the Debtor followed applicable law and are entitled to try again.

The Court notes that the Comptroller offered no evidence in support of its position other than to cross-examine Ms. Maingot.  That cross-examination consisted of little more than innuendo and an attempt to mischaracterize exhibits in an apparent attempt to obfuscate the record.  As stated at the conclusion of the hearing, the Court finds this type of behavior troubling—especially from those who are designated as the stewards of this great state.  The Court now more fully appreciates the integrity of Hal Morris, the Assistant Attorney General with whom the Court has the most familiarity.  Mr. Morris has long exhibited, without fail, the character and skill that does service to the citizens that he serves.  It is the Court's hope that the Attorney General himself will review this opinion and implement an educational process for his assistants that perpetuates the traits of Mr. Morris.

Based on the evidence presented, the Court concludes that the Debtor has met its burden. The Debtor has no liability for the debts of Kaya.  The Debtor's objection is sustained and the Comptroller's proof of claim is disallowed in its entirety.  A separate order consistent with the foregoing will issue.

**SIGNED: June 4, 2014.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**